# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD A. ZAKARIAN,             :

                **Petitioner**             :

           **v.**                          :

WARDEN D. K. WHITE,              :

           **Respondent**          :

CIVIL ACTION NO. 3:20-0121

(JUDGE MANNION)

## <u>MEMORANDUM</u>

Richard A. Zakarian, an inmate confined in the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania, filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges a disciplinary action against him, which occurred while he was incarcerated at the Federal Correctional Institution, Ashland, Kentucky. <u>Id</u>. Specifically, Petitioner presents the following nine grounds for review:

1. Correctional Officer K. Powell was the aggressor, not Petitioner.
2. Petitioner was not given adequate time for discovery to defend himself.
3. CO Powell did not follow protocol, in that if he felt threatened, proper procedure was to hit the distress button.
4. Conflicting statements between CO Powell and Petitioner.
5. CO Powell "took additional retaliation by throwing out personal legal and manuscripts that took hundreds of hours to produce, shouting 'garbage, garbage, garbage'."
6. Petition was denied his constitutional right to a polygraph during a prison discipline hearing.

7. Confession of staff members who "admit that the incident happened."
8. Cotinual verbal harassment by CO Powell.
9. Equitable tolling due to Petitioner being transferred from facility to facility.

Id. For relief, Petitioner requests the incident report be expunged and his good conduct time be restored. Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

On May 23, 2019 at approximately 7:30 p.m., Lt. D. McCallister, delivered Incident Report No. 3259844 to Zakarian, charging him with threatening another with bodily harm, in violation of Code 203. (Doc. 13-1 at 6, Incident Report). The incident report reads as follows:

> On 5/23/19 at 4:48 PM, I (C/O K. Powell) was conducting mail pass in my assigned Unit. Inmate Zakarian register number 58933-060 came into my office to present his ID for his mail. Inmate Zakarian continued to walk towards me until he was into my personal space (within one foot of my person). I told Inmate Zakarian to step back due to him being in such close proximity to me. Inmate Zakarian stepped back, but immediately began to take an aggressive posture. Along with taking an aggressive posture inmate Zakarian raised his voice stating "Rule number 3. You better respect me if you want me to respect you." Inmate Zakarian was also pointing his left index finger at me while making his previous statement. I told Inmate Zakarian to turn around and put his hands on the wall for a pat search. Inmate Zakarain then stepped within inches of my face with his fists clenched. I felt that my personal safety was in jeopardy, and his actions were very threatening in nature. I then repeated my previous command as I placed my right hand on Inmate

- 2 -

> Zakarian's left arm to guide him in the direction of the wall and
> pointed to the wall. Inmate Zakarian finally turned and submitted
> to a pat search. While conducting my pat search, Inmate
> Zakarian dropped his hands off the wall, and began to turn
> around. I warned Inmate Zakarian to keep his hands on the wall.
> Inmate Zakarian once again dropped his hands and began to
> turn around during my pat search. I again directed Inmate
> Zakarian not to drop his hands, and I completed my pat search.
> I then had Inmate Zakarian escorted to the Lieutenant's Office.

Id.

On May 28, 2019, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 13-1 at 6, Committee Action). Due to the severity of the charges, the UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. During the UDC hearing, staff member, T. Todd informed Zakarian of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 12, Inmate Rights at Discipline Hearing). Petitioner was also provided with an opportunity to request witnesses, which he declined. (Id. at 7). Petitioner's attitude was noted as cooperative, and Petitioner made the following statement:

> I went to get my mail. My foot was over the line in Mr. Powell's
> office. Officer Powell stated to me "can't you read mother fucker,
> get back." I stepped back and told Officer Powell I was being
> professional to him so I think he should be professional to me.
> Officer Powell stood up and pushed me in the chest and
> slammed me against the wall. Told me if I moved he would belt
> me.

Id.

On June 13, 2019, Zakarian appeared for a hearing before DHO, M. Gyurke. (Doc. 13-1 at 13-16). He waived his right to have witnesses. Id. Zakarian denied the charges before the DHO. Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: Memorandum dated May 23, 2019 from Lt. T. Vangundy; 1 photo sheet dated May 23, 2019 and a Clinical Encounter dated May 23, 2019 for Inmate Zakarian. Id.

The specific evidence relied on to support the DHO's findings was as follows:

> Your due process rights were reviewed with you by the DHO at the time of the hearing. You stated you understood your rights and had no documentary evidence to present. You did not request any witnesses, and you waived the previously requested staff representative and signed a statement confirming this. You indicated to the DHO you were ready to proceed.
>
> The DHO notes that during the investigation of this incident report and during the DHO hearing you made allegations regarding staff misconduct. The DHO forwarded your allegations to the appropriate staff. The DHO also notes that a typographical error was observed in Section 13 of the Incident Report. Although the date listed is "04-48-2019", the dates in Sections 4, 11, and 15 all reflect "05-23-2019". Since the date listed in Section 13 is not an actual date and the correct date is listed in every other applicable section, the DHO concluded this was a typographical error and does not believe this interfered with your ability to prepare a defense for this charge.

- 4 -

The DHO finds you to have committed the prohibited act of conduct disruptive to the orderly running of the institution most like threatening another person, Code 299 most like code 203.

The DHO bases this decision on the written statement of the reporting officer:

On 5/23/19 at 4:48 PM, I (C/O K. Powell) was conducting mail pass in my assigned Unit. Inmate Zakarian register number 58933-060 came into my office to present his ID for his mail. Inmate Zakarian continued to walk towards me until he was into my personal space (within one foot of my person). I told Inmate Zakarian to step back due to him being in such close proximity to me. Inmate Zakarian stepped back, but immediately began to take an aggressive posture. Along with taking an aggressive posture inmate Zakarian raised his voice stating "Rule number 3. You better respect me if you want me to respect you." Inmate Zakarian was also pointing his left index finger at me while making his previous statement. I told Inmate Zakarian to turn around and put his hands on the wall for a pat search. Inmate Zakarain then stepped within inches of my face with his fists clenched. I felt that my personal safety was in jeopardy, and his actions were very threatening in nature. I then repeated my previous command as I placed my right hand on Inmate Zakarian's left arm to guide him in the direction of the wall and pointed to the wall. Inmate Zakarian finally turned and submitted to a pat search. While conducting my pat search, Inmate Zakarian dropped his hands off the wall, and began to turn around. I warned Inmate Zakarian to keep his hands on the wall. Inmate Zakarian once again dropped his hands and began to turn around during my pat search. I again directed Inmate Zakarian not to drop his hands, and I completed my pat search. I then had Inmate Zakarian escorted to the Lieutenant's Office.

You denied the charge and stated as your defense "I went to get my mail in his office. He has a little sign in there that says "Stop". My foot was barely over his line and he said "Can't you read motherfucker". I was quoting his rules when I quoted Rule 3. I

- 5 -

never raised my voice to him, I never clinched my fists, I never raised my voice. It's all fabricated to cover up him shoving me."

The DHO considered your defense in which you deny threatening Officer Powell and you deny clinching your fists or raising your voice; however, the DHO relied on the eyewitness account of the reporting staff member. Officer Powell is clear in his report that while you were trying to get your mail, you came within one foot of him and after being told to step back you complied, but then took an aggressive posture. Further clear is that you then raised your voice while stating "Rule Number 3. You better respect me if you want me to respect you" while you were pointing your finger at him. At this point you were ordered to face the wall for a pat search and Officer Powell states that you then stepped within inches of his face while clenching your fists. Finally, he states that during the pat search you removed your hands from the wall twice and attempted to turn around at one point during the search. Although you deny this specific behavior the DHO finds no obvious reason for the staff member to fabricate this incident report and believes the staff member's observation was made strictly in the performance of his duties. Furthermore, the reporting officer is under a legal obligation to report truthful and accurate facts, whereas, you had much to lose by accepting responsibility or being truthful in this matter and the DHO believes that you are denying your role in this incident in an effort to avoid being sanctions for your actions.

Granted, you did not specify that you would cause physical harm to the staff member, the DHO believes that any reasonable person, in this same circumstance, would interpret your statement of "Rule Number 3. You better respect me if you want me to respect you" and actions of being close to him while clinching your fists and pointing at him during this incident as a means to intimidate or communicate a threat to cause harm to that individual.

Therefore, based on the evidence outlined above, the DHO finds the greater weight of the evidence to support you committed the prohibited act of conduct disruptive to the orderly running of the

institution most like threatening another person, Code 299 most like Code 203.

Id. The DHO sanctioned Zakarian on the Code 299 violation to twenty-seven (27) days loss of Good Conduct Time; fifteen (15) days disciplinary segregation; and six (6) months loss of commissary and phone, thru 12-12-2019. Id. The DHO documented his reasons for the sanctions given as follows:

> Making vailed threats to a staff member promotes disrespect for the staff member and seriously distracts from the staff member's ability to maintain control of his assigned area of responsibility which not only disrupted the security and orderly operation of the institution but created the potential for a larger disturbance to occur as well.

> The DHO disallowed this inmate's Good Conduct Time in accordance with his sentencing guidelines. The DHO imposed the sanctions of disciplinary segregation and the loss of commissary and phone to let the inmate know that he and he alone will be held responsible for his action/behavior at all times and to deter future behavior.

Id. Zakarian was advised of his appeal rights at the conclusion of the hearing. Id.

On January 23, 2020, Zakarian filed the instant petition for writ of habeas corpus, seeking expungement of Incident Report No. 3259884 and the return of his good conduct time, arguing that "Powell took the aggressive role, not [Petitioner]" and "if Powell told [Petitioner] to step back calmly, [he]

would not have to cite Rule #3, which Powell himself documented that [Petitioner] said." (Doc. 1, petition)

## II. **Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with

institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, *et seq*. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed

the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts

and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Zakarian was afforded all of the required procedural rights set forth in Wolff. He received written notice of the disciplinary charges at least twenty-four hours prior to the hearing; he appeared at the hearing and made a statement refuting the charges; he was given the right to a staff representative, an opportunity to present witnesses and provide documentary evidence (though he chose not to do so); and he was given a written statement explaining the DHO's decision. See Wolff, 418 U.S. at 564–66.

Petitioner raises nine challenges to his underlying disciplinary hearing. Grounds one, three and four are simply Petitioner's attempt to relitigate and advocate his version of the events. Specifically, Petitioner alleges that as soon as his foot crossed the threshold of Officer Powell's office, Officer Powell hurled abusive language at petitioner, "took [Petitioner's] mail, threw it at [him], sprung up, and shoved [Petitioner] in the chest with both hands."

- 11 -

(Doc. 1 at 7). Further, Petitioner alleges that Officer Powell did not "follow protocol" if he was threatened, which suggests Officer Powell "was the aggressor." Id. at 7. Finally, Petitioner explicitly disputes that he clenched his fists or assumed an aggressive stance. Id. Petitioner's bare allegations are not sufficient to overturn DHO Gyurke's findings. Petitioner asks the Court to credit his version of events over Officer Powell's, which is tantamount to a request to examine the record, independently assess his and Officer Powell's credibility, and weigh the evidence. Yet "Hill tells us, explicitly, that such a credibility determination is not required." See Thompson v. Owens, 889 F.2d 500, 502 (3d Cir.1989).

Petitioner's second and seventh claim are related in that they both concern the introduction of witnesses. (Doc. 1 at 7, 8). Petitioner claims that he "was not given adequate time for discovery to defend [him]self." Id. Specifically, he alleges that there were "five inmates who witnessed the incident" that did not testify at his hearing and that "two staff members admit" that petitioner's version of events is true. Id. The record reveals that Petitioner received notice of his disciplinary action on May 23, 2019, appeared before the UDC on May 28, 2019 and appeared for a hearing on June 13, 2019. Thus, Petitioner had three weeks within which to prepare for his defense, including gathering his witnesses or their statements. However,

although clearly presented with the opportunity to present witnesses at his hearing, Petitioner executed a form indicating that he did not wish to call any witnesses. Thus, Petitioner fails to demonstrate a due process violation, in that he was not prevented from calling witnesses, he simply chose to waive his right to call witnesses prior to the hearing.

To the extent that Petitioner argues in ground six that he was denied his constitutional right to a polygraph during the disciplinary hearing, initially, the Court notes that there is no indication in the record that Petitioner requested a polygraph test and was denied. Regardless, the Due Process Clause itself does not provide a federal right to take a lie detector test in a disciplinary hearing. See, e.g., Williams v. Werlinger, 451 Fed. Appx. 127 (3d Cir. 2011) (*per curiam*) (No due process violation in habeas context when federal prisoner was denied the opportunity to take a lie detector test for a disciplinary hearing; such a right is not protected under due process.); Flanagan v. Warden, U.S. Penitentiary, 784 F. Supp. 178, 181 (M.D. Pa. 1992) (Prisoner "had no constitutional right to the grant of his request for 'scientific' testing to establish non-ownership of the weapon"), aff'd sub nom. Flanagan v. Warden USP-Lewisburg, 6 F.3d 779 (3d Cir. 1993)(table); Patterson v. Gilmore, 974 F.2d 1340 (7th Cir. 1992) (inmate has no constitutional right to a polygraph test); Freitas v. Auger, 837 F.2d 806, 812

n.13 (8th Cir. 1988) (holding that prisoners are not entitled to polygraph tests in disciplinary hearings); Wigal v. Wilson, 865 F.2d 262 (6th Cir. 1988) (no right to polygraph or forensic tests). Petitioner is not entitled to habeas relief on this ground.

Petitioner's retaliation and verbal harassment claims, grounds five and eighth, are challenges to Petitioner's conditions of confinement and are not properly raised in a §2241 challenge to the fact or duration of confinement. See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

Finally, Petitioner's claim of equitable tolling, raised in ground nine, is moot, as Respondent does not dispute the timeliness of Petitioner's filing. (See Doc. 13 at 6).

Accordingly, a review of the record reveals that, in arriving at a finding of guilt, the DHO relied on the incident report and investigation, viewed a clinical encounter photo of Petitioner after the incident and considered a memorandum from Lt. Vangundy. The DHO's decision clearly meets the due process requirement of being supported by "some evidence in the record" under Hill. See Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

The Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 200-level, high severity level prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 6 months)
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III. <u>Conclusion</u>

For the reasons stated above, the petition for a writ of habeas corpus

will be **DENIED**. A separate Order will be issued.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED:    December 3, 2020**
20-0121-01

- 16 -